# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

CHAD W. NORMAN                                                             **PLAINTIFF**

V.                          **CASE NO. 4:17-CV-482-DPM-BD**

WILLIAM COOPER, *et al*.                                               **DEFENDANTS**

## RECOMMENDED DISPOSITION

**I.**     **Procedure for Filing Objections**

This Recommended Disposition ("Recommendation") has been sent to Judge D.P. Marshall Jr. Any party may file written objections to this Recommendation. Objections should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may waive the right to appeal questions of fact.

**II.**     **Background**

Plaintiff Chad W. Norman claims that Defendants violated his right to constitutionally adequate medical care while he was detained at the Pulaski County Detention Facility ("PCDF"). (Docket entries #2, #9) Separate Defendants Chase, Cooper, Johnson, Little, Mitchell, and Nichols ("Medical Defendants") have moved to dismiss claims against them based on Mr. Norman's failure to comply with the April 18, 2018 Order that required him to respond to outstanding discovery requests within 30

days. In the alternative, the Medical Defendants ask that the dispositive motions deadline be extended. (#39) Mr. Norman has not responded to the motion.

Separate Defendants Holladay and Rogers ("County Defendants") have moved for summary judgment on the merits of Mr. Norman's claims against them. (#41) Mr. Norman has not filed a response to the County Defendants' motion for summary judgment, and the time for doing so has passed.

### III.  **Medical Defendants' Motion to Dismiss**

On December 1, 2017, the Medical Defendants propounded interrogatories and requests for production of documents to Mr. Norman. On April 10, 2018, they moved for a court order compelling Mr. Norman to respond to discovery requests after having agreed to two extensions for Mr. Norman to respond. (#33) Mr. Norman did not respond to the motion to compel.

On April 18, 2018, the Court granted the Medical Defendants' motion to compel and ordered Mr. Norman to respond to the outstanding discovery requests within 30 days of that Order. Mr. Norman was cautioned that his claims could be dismissed if he failed to comply. (#35) To date, Mr. Norman has failed to comply with the April 18 Order requiring him to provide discovery responses.

Courts can dismiss a lawsuit as a sanction for failing to abide by an order compelling a party to respond to discovery requests. FED. R. CIV. P. 37(b)(2)(A)(v). Dismissal is a harsh, rarely used sanction—and for good reason. In this case, however, Mr. Norman's refusal to provide discovery responses has brought this case to a standstill. The outstanding discovery requests were propounded almost a year ago. The order

compelling him to respond to discovery requests was issued six months ago; yet Mr. Norman has not been in contact with the Court since then.

The Medical Defendants' motion to dismiss (#39) should be GRANTED. Mr. Norman's claims against Defendants Chase, Cooper, Johnson, Little, Mitchell, and Nichols should be DISMISSED, without prejudice.

IV. **County Defendants' Motion for Summary Judgment**

A. Standard

Summary judgment on the merits means that the Court rules in favor of a party without a trial. A moving party is entitled to summary judgment only if the evidence, viewed in the light most favorable to the non-moving party, shows that there is no genuine dispute as to any fact that is important to the outcome of the case. FED. R. CIV. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246 (1986).

B. Facts

On February 16, 2017, Mr. Norman was convicted of battery and was subsequently booked into the PCDF. (#42-1) The Pulaski County Sheriff's Office contracts with Turn Key Health to provide medical services to inmates at the PCDF. (#42-1)

On March 21, 2017, Mr. Norman fell from his top bunk and injured his right foot and knee. (#2, #9) On March 22, 2017, he filed a sick-call request complaining of an injury to his right foot and knee. He opined that he had likely fractured the joint between his toe and foot based on the swelling and pain. (#42-3, p.5) The same day, medical staff

ordered 600 mg of ibuprofen for Mr. Norman, to be taken twice a day through March 29, 2017. (#42-3, p.6)

On March 23, 2017, Mr. Norman was examined by Defendant Little, a nurse employed by Turn Key. Nurse Little noted a slightly decreased range of motion in Mr. Norman's right foot. (#42-3, p.8) Defendant Little ordered Mr. Norman to apply cold packs to the affected area for 20 minutes every three hours and to take 1000 mg of Tylenol twice daily or 400 mg of ibuprofen twice daily for seven days. (#42-3. p.7) According to Mr. Norman's complaint, Defendant Little told him that she thought his foot was fractured, and she placed him on a list for x-ray. (#2, p.4; #9, p.6)

On March 30, 2017, Mr. Norman filed an emergency grievance complaining that his foot had not be x-rayed, even though Defendant Little had told him that she had put him on the list for an x-ray. (#42-2, p.18) Mr. Norman was concerned that his bones would not heal properly without medical help, and he requested an immediate x-ray. (#42-2, p.18)

Defendant Rogers received the grievance, noted that it was an emergency grievance, and immediately called his supervisor.[1] (#42-4) Defendant Rogers's supervisor instructed him to process the grievance as a normal, non-emergency

---

[1] When staff members receive emergency grievances, Pulaski County Sheriff's Office policy requires them to immediately notify their supervisors or deliver the grievances to the watch commander or designee. (#42-2)

grievance.[2] (#42-4). On March 31, 2017, medical staff ordered 400 mg of ibuprofen for Mr. Norman to be administered twice daily until April 7, 2017. (#42-3)

On April 3, 2017, Defendant Johnson assessed Mr. Norman and noted that he walked with a limp and might have a facture. (#2, p.4; #42-3, p.15-16) Defendant Johnson scheduled an x-ray and gave Mr. Norman an Ace wrap for his right foot. He also ordered 800 mg of ibuprofen to be taken daily for 30 days. (#2, p.4; #42-3, p.17) On the same day, Mr. Norman was moved to a lower bunk. (#42-3, p.21)

On April 6, 2017, Mr. Norman's right foot was x-rayed. (#42-3, p.23) A radiologist reviewed the x-ray and noted no acute fracture, dislocation, or soft tissue swelling. (#2, p.5; #42-3, p.24)

On April 11, 2017, after learning of the x-ray results, Sergeant Brawley (not a named Defendant) responded to Mr. Norman's March 30 grievance with the x-ray results. (#2, p. 5; #42-2, p.19-20) Mr. Norman did not appeal the grievance.

On May 23, 2017, medical staff ordered that Mr. Norman receive 1000 mg of acetaminophen (Tylenol) twice daily until May 30, 2017. (#42-3, p.25)

On May 24, 2017, Mr. Norman submitted a sick-call request complaining that his foot had not fully healed; that he was in pain; and that he was unable to flex his foot. (#42-3, p.26) On May 26, 2017, nurse Simmons (not a named Defendant) assessed Mr.

---

[2] Pursuant to the Pulaski County Sheriff's Office directive, a grievance can be deemed a non-emergency grievance by a grievance officer, watch commander, or designee, and is then processed within normal guidelines. (#42-2)

Norman and noted swelling and a decreased range of motion. (#42-3, p.27-28) Mr. Norman was prescribed 400 mg of ibuprofen twice daily for seven days. (#42-3, p.28)

On June 6, 2017, Defendant Chase saw Mr. Norman and noted that he was limping and had tenderness in his foot over cuboid bones. (#42-3, p.34-38) Defendant Chase ordered a follow-up appointment in seven days, and Mr. Norman was provided crutches. (#42-3, p.34-38)

On June 8, 2017, Mr. Norman's right foot was x-rayed a second time. A radiologist reviewed the x-rays and found no fracture, dislocation, or soft tissue swelling. (#42-3, p.39-40)

On June 16, 2017, nurse Brown (not a named Defendant) requested a consultation with an orthopedist for Mr. Norman because of a suspected fracture. (#42-3, p.41) There is no record that the request was granted. (#42-3)

On June 18, 2017, Mr. Norman was prescribed 1000 mg of acetaminophen twice daily until June 25, 2017. (#42-3, p.43)

On June 21, 2017, Mr. Norman filed a sick-call request reporting that Defendant Chase had diagnosed him with a fracture and requesting a cane. (#42-3, p.44) Mr. Norman was provided a cane. (#42-3, p.44)

On June 27, 2017, Mr. Norman was prescribed 1000 mg of acetaminophen twice daily until July 4, 2017. (#42-3, p.43) On that same day, Mr. Norman filed a grievance explaining that he had injured his foot on March 21 but had not received a cane in the intervening three-and-a-half months. (#42-2, p.21) Mr. Norman explained that he had

been examined by Defendant Chase on June 16, 2017, and she had diagnosed a "navicular fracture" to his right foot and ordered an MRI. (#42-2, p.21)

Sergeant Brawley responded that Mr. Norman had been examined by a provider on June 6, 2017. (#42-2, p.22) Mr. Norman appealed, and Chief Morgan (not a named Defendant) concurred with the grievance officer's decision that Mr. Norman had already been seen by a provider regarding his complaints. (#42-2, p.23)

On July 26, 2017, Mr. Norman filed this lawsuit. On August 29, 2017, he was released from PCDF into the custody of the Arkansas Department of Correction. (#42-1, p.2) On October 6, 2017, his right foot was again x-rayed. A radiologist reviewed the x-ray and noted forefoot swelling, but no fracture or dislocation. (#42-5, p.3)

    C.    Deliberate Indifference

To state a claim for deliberate indifference to a medical need, Mr. Norman must assert facts that, if true, show that jail officials knew of his serious medical need yet deliberately disregarded it. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). To find deliberate-indifference, there must be facts indicating a high degree of culpability. Negligence and even gross negligence do not rise to the level of a constitutional violation. Likewise, mere disagreement with treatment decisions cannot support a deliberate-indifference claim. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006). Stated another way, Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany v. Carnahan*, 132 F.3d 1234, 1240-1241 (8th Cir. 1997) (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). See also *Allard v. Baldwin*, 779 F.3d 768, 771-72 (8th Cir. 2015)

(to prevail on Eighth Amendment claim, inmate must show that defendants' mental state was akin to criminal recklessness).

    1.    Defendant Holladay

Mr. Norman does not allege that Defendant Holladay had any personal knowledge of his injury or his medical treatment. Rather, Mr. Norman names Mr. Holladay as a Defendant based on his position as Sheriff of Pulaski County, Arkansas. (#9, p.7)

General responsibility for supervising a jail's operation is insufficient to establish the personal involvement required to support liability. See *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (In a §1983 action, supervisors cannot be held vicariously liable for the constitutional violations of their subordinates based solely on their role as supervisors). Mr. Norman has not pleaded facts to show that Defendant Holladay knew about his injury or about the medical treatment provided by Turn Key. Accordingly, his claims against Defendant Holladay fail, as a matter of law.

    2.    Defendant Rogers

Mr. Norman argues that Defendant Rogers should have treated his March 30, 2017 grievance as an emergency and, because he did not, treatment was unnecessarily delayed. The undisputed evidence shows that Defendant Rogers did not ignore Mr. Norman's characterization of his grievance as an emergency. In the grievance, Mr. Norman stated that he had injured his foot, had been told that it was fractured, and had requested an x-ray. Defendant Rogers immediately called his supervisor, as policy required, who instructed him that the grievance should not be processed as an emergency grievance.

The next day, Mr. Norman received medication for pain; two days later, he was assessed by a nurse and an x-ray was scheduled. Defendant Rogers's decision to follow the advice of his supervisor and to process the grievance as a non-emergency grievance is not conduct that supports a claim of deliberate indifference.

Moreover, during the four-month period Mr. Norman claims to have received inadequate medical care at the PCDF, the undisputed record shows that he routinely received medication for pain and was regularly examined by nurses and doctors in response to his complaints. Mr. Norman himself reports that, after the accident, a nurse examined him and placed him on a list for x-ray. In the meantime, he was provided pain medication, cold compresses, and a foot wrap. Thirteen days after the accident, Mr. Norman was moved to a bottom bunk. Sixteen days after the accident, Mr. Norman's foot was x-rayed. It is undisputed that the x-ray revealed no fracture, no dislocation, and no soft-tissue swelling.

Because Mr. Norman continued to report pain and trouble walking, he was given pain medication and crutches. He underwent a second x-ray on June 8, 2017, about two months after the accident. Again, the x-ray revealed no fracture, no dislocation, and no soft-tissue swelling. Because Mr. Norman continued to complain of pain, however, he was provided pain medication and a cane.

Based on these facts, the Court cannot conclude that Mr. Norman received constitutionally inadequate medical care. He might not agree with the medical care that he received while at the PCDF, but his medical records refute his allegations of deliberate indifference to serious medical needs.

### 3. Official Capacity Claims

Mr. Norman's claims against the County Defendants in their official capacities are, in effect, claims against Pulaski County. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir.2010). Local governments are not liable under § 1983 for injuries inflicted solely by their employees or agents. *Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694 (1978). Rather, a county is liable for the acts of its employee only when the employee violates a person's right while carrying out a county policy or custom. *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628, 632 (8th Cir. 2009).

Claims against Pulaski County fail for two reasons. First, the individual Defendants did not violate Mr. Norman's rights; thus, he did not suffer a constitutional injury as a result of a County policy. Second, Mr. Norman has not set forth facts to show that Pulaski County had an unconstitutional policy or custom.

## V. Conclusion:

The Court recommends that the Medical Defendants' motion to dismiss (#39) be GRANTED under Federal Rule of Civil Procedure 37(b)(2)(A)(v). Claims against Medical Defendants Cooper, Johnson, Little, Nichols, Chase, and Mitchell should be DISMISSED, without prejudice.

The Court further recommends that the County Defendants' motion for summary judgment (#41) be GRANTED. Mr. Norman's claims against Defendants Holladay and Rogers, both individual and official-capacity claims, should be DISMISSED, with prejudice.

DATED this 31st day of October, 2018.

                                                                                 UNITED STATES MAGISTRATE JUDGE